IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

FILED
SEP 11 2018
Clerk, U.S. District Court
Eastern District of Tennessee
At Chattanooga

RAY COMER and MARY NABORS, )
As Parents and Next Friend of SHELBY )
LEANN COMER, )
)
)
)
Plaintiffs, )
)
v. ) CASE NO.: 4:18-cv-58
) JURY DEMAND
CLINT SHRUM, in his Official Capacity as SHERIFF ) Reeves/Lee
of GRUNDY COUNTY, TENNESSEE, )
CLINT SHRUM, individually and MIKE HOLMES, )
Individually )
)
Defendants. )

## COMPLAINT

Come the Plaintiffs in the above captioned matter, Ray Comer, Mary Nabors, as Parents and Next Friend of Shelby Leann Comer, Deceased, and sue the Defendants, Clint Shrum, in his Official Capacity as Sheriff of Grundy County, Tennessee, Clint Shrum, individually and Part-time Deputy, Mike Holmes, individually, and for their cause of action would show unto the Court as follows:

### I.
### JURISDICTION

1. This Court has jurisdiction of this matter pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

### II.
### VENUE

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

1

## III.
## PARTIES

3.  The Plaintiffs, Ray Comer and Mary Nabors, are the parents of Shelby Leann Comer, Deceased.

4.  Shelby Leann Comer was born on October 23, 1997 and she died on December 23, 2017.

5.  Shelby Leann Comer had two brothers at the time of her death, Aaron Comer and Landon Comer.

6.  The Defendant, Clint Shrum, in his official capacity as Sheriff of Grundy County, Tennessee, (hereinafter referred to in this complaint as " Shrum" or "Clint Shrum, in his Official Capacity as Sheriff of Grundy County, Tennessee") was at the time described in this complaint the duly elected sheriff for Grundy County, Tennessee.

7.  Clint Shrum, individually (hereinafter referred to in this complaint as " Shrum individually") at the time described in this complaint the duly elected sheriff for Grundy County, Tennessee, and as set out in this complaint is being sued in his individual capacity.

8.  The Defendant, Mike Holmes, individually (hereinafter referred to as "Holmes") was employed, on a part-time basis, by the Grundy County, Tennessee Sheriff's Department.

9.  The Defendant, Holmes, when he was working for or on duty with the Grundy County, Tennessee Sheriff's Department, was performing duties and job responsibilities of a Deputy Sheriff of Grundy County, Tennessee.

## IV.
## FACTS

10. On December 23, 2017, Shelby Leann Comer was a passenger in a vehicle being operated by Jacky Bean (hereinafter referred to as "Bean" or "Jacky Bean").

11. Jacky Bean was operating or driving a Ford Mustang automobile (hereinafter referred to as "Mustang" or "the Mustang").

12. At approximately 10:30 p.m. on December 23, 2017, the Defendant Holmes was on duty and working as a Deputy Sheriff for the Grundy County Sheriff's Department and driving a marked Sheriff's Department patrol vehicle (hereinafter patrol vehicle).

13. At approximately 10:30 p.m. on December 23, 2017, the Defendant Holmes attempted to initiate a traffic stop of the Mustang being driven by Jacky Bean.

14. Jacky Bean failed to stop his Mustang and drove away from the Defendant Holmes.

15. The Defendant Holmes gave chase and eventually Bean drove the Mustang to a point on B Mine Road in the Flat Branch community of Grundy County, Tennessee where the pavement, or tar and gravel surface, ended.

16. B Mine Road continues but the road surface after the pavement ends is like a logging road and not suitable for a passenger vehicle like the Mustang.

17. The Mustang driven by Bean was not able to be driven or continue past the end of the pavement.

18. After Bean reached the point on B Mine Road where the pavement ended Bean attempted to turn the Mustang around so as to travel back down B Mine Road in the direction from whence he came.

3

19. As Bean attempted to drive back out B Mine Road, the Defendant Holmes arrived and positioned the patrol vehicle partially across the roadway.

20. When Bean saw the patrol vehicle Bean stopped the Ford Mustang automobile.

21. Defendant Holmes got out of his patrol vehicle and started walking toward the Mustang, that was stopped or not moving, occupied by Shelby Leann Comer and Jacky Bean.

22. As the Defendant Holmes approached the Mustang, the Defendant Holmes removed a .40 caliber Glock handgun, which was issued or provided to him by the Grundy County Sheriff's Department, from its holster and pointed the handgun at the Mustang occupied by Shelby Leann Comer and Jacky Bean.

23. At this point in time the Defendant Holmes did not know the identity of the driver of the Mustang. At this point in time the Defendant Holmes did know that there was a female in the front passenger seat.

24. At this point in time the only legal or justifiable reason that the Defendant Holmes had to stop the Mustang was for a traffic violation.

25. At this time point in time Holmes did not have any reason to suspect that Bean had any outstanding arrest warrants or was wanted for any type of criminal activity.

26. At this point in time Holmes did know that there was at least one passenger in the Mustang.

27. At this point in time Holmes knew he was in a sparsely populated area and there was no other vehicular traffic on B mine Road.

28. As the Defendant Holmes walked toward the Mustang, the Defendant Holmes fired two shots from the Glock .40 caliber pistol at the Mustang.

4

29. The Defendant Holmes fired these two shots at the Mustang without any justification and without issuing any warning that he, Holmes, was going to fire the Glock .40 caliber handgun.

30. Jacky Bean, after seeing and hearing the Defendant Holmes fire the two shots at the Mustang, attempted to drive past the Defendant Holmes.

31. As the Mustang driven by Bean passed the Defendant Holmes, Holmes fired several shots into the side of the Mustang.

32. After the Mustang drove past the position of the Defendant Holmes and was traveling away from the Defendant Holmes on B Mine Road, the Defendant Holmes continued to fire at the Mustang.

33. The Defendant Holmes fired a total of thirteen (13) shots at the side or rear of the Mustang.

34. One of the bullets fired by the Defendant Holmes, after the Mustang past his position on the road, and was traveling away from the Defendant Holmes struck Shelby Leann Comer in her left back.

35. The bullet that struck Shelby Leann Comer in the back traveled through her body and punctured her lung, diaphragm, left kidney, spleen, causing great damage to other structures and tissue in her body and caused tremendous damage, pain and suffering to Shelby Leann Comer.

36. Shelby Leann Comer died from this gunshot wound on December 23, 2017.

## V.
## LIABILITY OF DEFENDANT HOLMES

37. The Plaintiffs incorporate the preceding allegations set out in paragraphs 1 through 36 as if fully set forth herein.

38. On December 23, 2017 the Defendant Holmes was performing his duties as a part-time Deputy Sheriff for Grundy County, Tennessee.

39. On December 23, 2017 the Defendant Holmes was alone and was not paired with a field training officer or other certified officer.

40. During all times material to this Complaint, the Defendant Holmes was acting under color of state law in his position as a part-time Deputy Sheriff of Grundy County, Tennessee.

41. The actions of the Defendant Holmes, as set out in this complaint, deprived the deceased, Shelby Leann Comer, of her right to be free from excessive force and unwarranted seizure guaranteed to Shelby Leann Comer by the Fourth Amendment to the Constitution of the United States of America.

42. After the Mustang driven by Bean passed the Defendant Holmes and the patrol vehicle, Bean did not pose a threat of serious harm to the Defendant Holmes

43. After the Mustang driven by Bean passed the Defendant Holmes and the patrol vehicle, Bean did not pose a threat of serious harm to any other individuals.

44. The attempt by the Defendant Holmes to arrest or seize Bean by the use of deadly force after the Mustang driven by Bean had passed the position of the Defendant Holmes on B Mine Road constitutes excessive force and an attempted unwarranted and illegal seizure and is a

6

violation of the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. § 1983.

45. The facts set out above establish a violation of the Fourth Amendment to the Constitution of the United States of America that has been clearly established by decisions of the United States Supreme Court as well as the Sixth Circuit Court of Appeals for over thirty (30) years.

46. The law has been clearly established and settled in this judicial circuit for over thirty (30) years that a criminal suspect, in the position of Jacky Bean, has a right not to be shot unless he is a threat to the pursuing officers or others.

47. This violation of the Fourth Amendment to the Constitution of the United States of America as well as the violation of 42 U.S.C.§ 1983 by the Defendant Holmes, as set out in this Complaint, was the direct and proximate cause, of the death of Shelby Leann Comer.

## VI.
## LIABILITY OF CLINT SHRUM, IN HIS OFFICIAL CAPACITY AS SHERIFF OF GRUNDY COUNTY, TENNESSEE

48. The Plaintiffs incorporate the preceding allegations set out in paragraphs 1 through 47 as if fully set forth herein.

49. The Defendant Shrum is the official with final decision-making authority for the Grundy County Sheriff's office.

50. Tennessee law, *T.C.A.* 38-8-101 et. seq. and Rule 1110-02.01, *Rules of the Tennessee Peace Officers Standards and Training Commission*, require that all full time law enforcement officers be required to complete a course of study and training approved by and be certified by The Tennessee Peace Officers Standards and Training Commission (hereinafter referred to as POST).

7

51. It is a violation of Tennessee law, *T.C.A.* 38-8-105 for the Defendant Shrum to employ or allow an individual to serve as a full time Deputy Sheriff without POST training and certification.

52. The POST rules, 1110-08-.03, require, in part, that a person employed as a part time law enforcement officer, such as the Defendant Holmes, "shall receive eighty (80) hours of training in whatever duties they are required to perform by the employing agency."

53. This rule, 1110-08-.03, further requires that this training be accomplished during the first calendar year of employment.

54. This rule, 1110-08-.03, also requires that the part time officer, in this case the Defendant Holmes, "must be paired with a field training officer or other certified officer" prior to the officer receiving the eighty (80) hours of training.

55. POST rule, 1110-08-.04, requires that a part time officer, in this case the Defendant Holmes, after receiving the eighty hours (80) of training complete an additional forty (40) hours of in-service training every year.

56. The Defendant Shrum hired or employed the Defendant Holmes when the Defendant Shrum knew or should have known that the Defendant Holmes was not POST certified and had not attended or completed any POST classes or <u>any</u> other law enforcement training.

57. On December 23, 2017 the Defendant Shrum knew that the Defendant Holmes was working or performing duties as a Grundy County deputy sheriff alone and was not paired with a field training officer or other certified officer in violation of POST rule 1110-08-.03.

58. The Defendant Shrum allowed, sanctioned and was aware that the Defendant Holmes performed the duties of a deputy sheriff while acting alone without the supervision or

8

mentoring of a field training officer or other certified officer in violation of POST rule 1110-08-.03.

59. The Defendant Shrum knew that the Defendant Holmes was not qualified to perform the duties assigned to Holmes by Shrum and was not allowed under state law to act as a law enforcement officer without the supervision or mentoring of a field training officer or other certified officer.

60. The Defendant Shrum hired or employed the Defendant Holmes when the Defendant Shrum knew or should have known that the Defendant Holmes was not adequately trained to act as a law enforcement officer. In particular Defendant Shrum knew or should have known that the Defendant Holmes was not adequately trained concerning the constitutional limitation on the use of deadly force by a law enforcement officer.

61. It is a typical and frequent occurrence for a Grundy County Deputy Sheriff, as well as all law enforcement officers, to encounter a situation where a suspect resists arrest or attempts to flee.

62. The Defendant Shrum as the Chief Law Enforcement Officer for Grundy County, Tennessee knew or should have known that a Grundy County Deputy Sheriff, or other law enforcement officers, will encounter individuals that attempt to escape, flee or resist arrest or apprehension.

63. The Defendant Shrum as the Chief Law Enforcement Officer for Grundy County, Tennessee knew or should have known this is a reoccurring situation that presents obvious potential for constitutional violations for Deputies that are not properly trained.

64. The Defendant Shrum as the Chief Law Enforcement Officer for Grundy County, Tennessee, armed his deputies with handguns or other deadly weapons to accomplish the task of arresting fleeing criminal suspects.

65. The Defendant Shrum as the Chief Law Enforcement Officer for Grundy County, Tennessee, had a duty to train his Deputies in the constitutional limitations on the use of deadly force.

66. The Defendant Shrum knew that a Deputy Sheriff, such as the Defendant Holmes, lacking the specific tools, training and experience to handle the situation in which a suspect resists arrest or attempts to flee arrest was likely to result in a constitutional violation of a citizen's rights.

67. The need to train officers concerning the constitutional limitations on the use of deadly force is so obvious that the intentional failure to do so by the Defendant Shrum establishes a deliberate indifference to the constitution rights of specifically Shelby Leann Comer, the citizens of Grundy County, Tennessee, as well as any visitors or tourists inside Grundy County, Tennessee.

68. The Defendant Shrum allowed the Defendant Holmes to act as a Deputy Sheriff of Grundy County, Tennessee, when the Defendant Shrum knew that the training program or lack of a training program established for the Defendant Holmes, and other individuals acting in the position of a part time Deputy Sheriff, was not adequate.

69. The training, if any, provided to the Defendant Holmes by the Defendant Shrum was grossly insufficient in the area of the use of deadly force considering the life and death decisions that a Deputy must make in deciding to use deadly force.

70. The Defendant Shrum was deliberately indifferent to the right of Shelby Leann Comer through his inaction.

71. The Defendant Shrum failed to discipline Holmes in any manner after the shooting incident set out in this complaint.

72. The Defendant Shrum was aware and had actual knowledge of the existence of a clear and persistent pattern of illegal activity of allowing Holmes to act as a deputy without any training and without supervision.

73. The Defendant Shrum evidenced his approval of the unconstitutional conduct by allowing Holmes to continue to function as a deputy, untrained and unsupervised, after the shooting death of Shelby Leann Comer.

74. The Defendant Shrum's custom set out above was the moving force or the direct causal link in the constitutional deprivation and death of Shelby Leann Comer.

75. As established above the Defendant, Shrum, was deliberately indifferent to the rights of Shelby Leann Comer and other individuals protected by the Fourth Amendment to the Constitution of the United States of America.

76. The Defendant Shrum is responsible for the custom, policy, practice, tolerance or acquiescence that was the moving force behind the violation of the constitutional rights of Shelby Leann Comer as set out in this complaint.

77. This violation of the Fourth Amendment to the Constitution of the United States of America as well as the violation of 42 U.S.C.§ 1983 by the Defendant Shrum, as set out in this Complaint, was the moving force and the direct and proximate cause, of the death of Shelby Leann Comer.

## VII.
## SINGLE INCIDENT LIABILITY

78. The Plaintiffs incorporate the preceding allegations set out in paragraphs 1 through 77 as if fully set forth herein.

79. The Defendant Shrum armed all of the Deputy Sheriffs employed by him and under his authority with handguns and other deadly weapons and deploys those armed Deputy Sheriffs into the public to, among other duties, capture or apprehend criminal suspects.

80. It is a typical and frequent occurrence that a Grundy County Deputy Sheriff, as well as all law enforcement officers, will encounter a suspect that resists arrest or attempts to flee.

81. The Defendant Shrum knew that the Defendant Holmes was not POST trained or certified.

82. The Defendant Shrum knew that the Defendant Holmes was not otherwise adequately trained concerning an officer's constitutional limitation on the use of deadly force.

83. The Defendant Shrum knew that a Deputy Sheriff, such as the Defendant Holmes, lacking the specific tools, training and experience to handle the situation in which a suspect resists arrest or attempts to flee arrest would likely result in a constitutional violation of the citizen's rights.

84. The Defendant Shrum as the Chief Law Enforcement Officer for Grundy County, Tennessee, knew to a moral certainty that the Deputies employed under his authority, by the Grundy County Sheriff's Department, would encounter situations in which an individual suspected of a crime would not voluntarily submit to arrest.

85. The Defendant Shrum as the Chief Law Enforcement Officer for Grundy County, Tennessee, knew to a moral certainty that the Deputies employed under his authority, by the Grundy County Sheriff's Department, would be required to use some degree of force to affect the arrest of fleeing criminal suspects.

86. The failure of the Defendant Shrum to equip his part time Deputy Sheriffs, such as Holmes, with specific tools and training to handle the reoccurring situations of suspects that attempt to flee or resist arrest resulted in the highly predictable or obvious potential that the Defendant Holmes would violate a citizen's Fourth Amendment rights to be free of excessive force and unreasonable seizure.

87. It is extremely likely that this particular situation, a suspect attempting to flee from arrest or seizure, will reoccur.

88. The Defendant Shrum knew or should have known that when a Deputy Sheriff, such as Holmes, lacks proper training to respond appropriately to the situation, such as a suspect attempting to flee from arrest or seizure, that the Deputy is more likely to violate a citizen's Fourth Amendment rights to be free of excessive force and unreasonable seizure.

89. The decision on the part of the Defendant Shrum to allow the Defendant Holmes to act as a Grundy County Deputy Sheriff without proper training concerning the constitutional limits on the use of deadly force reflects the deliberate indifference of the Defendant Shrum to the highly predictable consequences, namely violations of the constitutional rights of Shelby Leann Comer.

90. The unconstitutional consequences of the Defendant Shrum failing to train the Defendant Holmes, was so patently obvious that the Defendant Shrum is liable under 42 U.S.C. § 1983 for the violation of the Fourth Amendment Constitutional rights of Shelby Leann Comer.

## VIII.
## LIABILITY OF CLINT SHRUM, IN HIS INDIVIDUAL CAPACITY

91. The Plaintiffs incorporate the preceding allegations set out in paragraphs 1 through 90 as if fully set forth herein.

92. The Defendant Shrum individually in his role of a supervisor of the Defendant Holmes knew, or should have known, that the Defendant Holmes had received no POST training.

93. The Defendant Shrum individually in his role of a supervisor of the Defendant Holmes knew that the Defendant Holmes was required to have received eighty (80) hours of training in order to be allowed to perform the duties of a part time deputy sheriff.

94. The Defendant Shrum individually in his role of a supervisor of the Defendant Holmes knew, or should have known, that the Defendant Holmes in fact had not received any training concerning police tactics or procedures or law.

95. The Defendant Shrum individually in his role of a supervisor of the Defendant Holmes knew, or should have known, that the Defendant Holmes had work for at least two (2) other police departments prior to being employed as a part time Grundy County deputy sheriff.

96. The Defendant Shrum individually in his role of a supervisor of the Defendant Holmes knew, or should have known, that the Defendant Holmes had left or stopped work with these two (2) other police departments because he, Holmes, had not obtained the necessary training with in a calendar year to continue to be employed even as a part time law enforcement officer by those other two (2) police departments.

97. The actions of the Defendant Shrum individually establish that he encouraged, authorized, approved, and knowingly acquiesced in allowing the Defendant Holmes to be on the streets of Grundy County, Tennessee as an official deputy sheriff armed and dangerous because

of Holmes' complete lack of law enforcement training there by being in a position to unlawfully take the life of Shelby Leann Comer as a result of the violation of the Constitutional protections afforded to Shelby Leann Comer.

# IX.
# DAMAGES
## A
## PUNITIVE DAMAGES

98. The actions set out in this complaint establish that the Defendant Holmes, when he fired fifteen (15) bullets at a suspect, Bean, accused of only a misdemeanor offence, acted with a reckless or callous indifference to the federally protected rights of Shelby Leann Comer.

99. The actions set out in this complaint establish that the Defendant Shrum individually acted with a reckless or callous indifference to the federally protected rights of Shelby Leann Comer by knowingly and intentionally hiring or employing Holmes as a deputy even though the Defendant Shrum individually knew that Holmes had no law enforcement training and by allowing Holmes to perform the duties of a deputy without being supervised or paired with a certified officer in violation of POST rules.

## B
## COMPENSATORY DAMAGES FOR SHELBY LEANN COMER

100. As a direct and proximate result of the unconstitutional actions of each Defendant Shelby Leann Comer was killed by the Defendant Holmes and Plaintiffs are entitled to damages inflicted upon Shelby Leann Comer for her physical and mental pain and suffering, loss of enjoyment of life, loss of future income, medical and funeral expenses as well as the loss and damages suffered by her parents, and siblings

**WHEREFORE** the Plaintiffs demand that upon a trial of this matter they be awarded a judgment against each of the Defendants, both jointly and severally, in the amount of

$15,000,000.00, in compensatory damages and punitive damages in the amount of $10,000,000.00 and a jury of twelve (12) to try this matter and for such other further and general relief as justice may require.

Respectfully submitted,

_____
Fred C. Dance, BPR #7004
Attorney for Plaintiffs
234 1st Avenue South
Franklin, Tennessee 37064
(615) 794-3450
(615) 794-3510 fax
Email: fdclaw@bellsouth.net