IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

RAY COMER and MARY NABORS, as parents )
and next friend of SHELBY LEANN COMER, )
                                                             )
    Plaintiffs, )
                                                             )    Civil Action No. 4:18-CV-58
v. )
                                                              )    **JURY DEMAND**
CLINT SHRUM in his Official Capacity as )
SHERIFF of GRUNDY COUNTY, TENNESSEE, )
CLINT SHRUM, individually, TONY BEAN, in his )
Official Capacity as a deputy sheriff of Grundy )
County Tennessee, TONY BEAN, individually, )
and MIKE HOLMES, individually, )
                                                             )
    Defendants. )

## DEFENDANTS CLINT SHRUM AND TONY BEAN'S TRIAL BRIEF

Clint Shrum and Tony Bean (hereinafter referred to as "Defendants" unless otherwise specifically identified), file with the Court their Trial Brief as follows:

### STATEMENT OF FACTS

The facts of this case are well known to the Court based on the multiple pleadings filed in this matter to include Defendants' Motion to Dismiss and Motion for Summary Judgment. In addition, other parties to this case have previously filed with the Court their Trial Briefs. Defendants have also previously filed with the Court the proper support for the factual statements set forth below and for that reason have not attached the same to this pleading.

The above-styled case is based on the death of Shelby Leann Comer, which Plaintiffs allege occurred as a result of a shooting event that took place on December 23, 2017. On December 23, 2017, Shelby Leann Comer was a passenger in a vehicle driven by Jacky Wayne

1

Bean (no relation to Tony Bean) in Grundy County, Tennessee. This case involves the use of deadly force by Holmes that is alleged to have caused Ms. Comer's death.

At the same time, Holmes was employed as a part-time police officer for Grundy County. Clint Shrum was the sheriff of Grundy County and Tony Bean was the chief deputy. Prior to working for Grundy County, Holmes had worked in law enforcement in the surrounding areas for a number of years. Defendants Shrum and Bean were aware of Holmes' law enforcement work. Additionally, Holmes had the proper qualifications to be employed and work as a part-time police officer for Grundy County. In that respect, Holmes had received at least eighty (80) hours of in-service training prior to the incident giving rise to this litigation, which such training included use of force training. Because of his employment with Grundy County being part-time, Holmes was not required by POST (Police Officer Standards and Training) to be certified. Furthermore, and before he was hired, Grundy County received Holmes' prior training records, was aware of his law enforcement experience, checked his background, performed a criminal check and confirmed his driving record. Although Plaintiffs claim technical noncompliance with various POST regulations, there is no causal connection with those claimed regulations and the incident giving rise to this matter.

At the time of the incident giving rise to this matter, Grundy County had in force and effect proper policies and procedures regarding the use of force. The Grundy County Sheriff's Office further maintained a policy that required its police officers to complete the requisite and mandatory training requirements governing police officers and compliance with the same was enforced by Grundy County at the time of the incident giving rise to this matter and prior to the same. Further, as of December 23, 2017, no complaints related to Mike Holmes' service as a police officer were known to Defendants Shrum and/or Bean. Also, prior to and as of December 23, 2017, there were no incidents in which Mike Holmes was found to have used excessive force or violated any policy or procedure of the Grundy County Sheriff's Office and no disciplinary

2

actions were taken against him as a result of improper conduct, excessive force, aggression, or any other reason.

On December 23, 2017, Holmes was at Coalmont School in Grundy County, Tennessee when he saw a Mustang drive by on Highway 56 at a high rate of speed. Holmes estimated the speed at 80-100 miles per hour. Jacky Bean was the driver of the Mustang. Holmes pulled out and followed the Mustang. The driver, Jacky Bean, did not pull over and continued from Highway 56 onto Q-Switch Road, where he stopped momentarily but eventually started again. Jacky Bean continued down Q-Switch Road on a curvy road driving 40-50 miles per hour in a 30 mile per hour zone. Jacky Bean continued on B-Mine Road where at a particular location he spun the Mustang around and turned his car back towards the direction of travel that he had just come. Holmes likewise stopped on B-Mine Road behind the Mustang although the two vehicles were facing each other. Holmes got out of his car and walked to the front of it. Holmes knew at that time there was another occupant in the vehicle.

It was at this time that Holmes saw Jacky Bean point a gun and consequently Holmes fired a shot into the driver's side of the Mustang. Holmes did not shoot as soon as he got out of his vehicle but only in response Jacky Bean's actions. Jacky Bean then drove toward Holmes, who had to move to the passenger side to get out of the way. Jacky Bean continued coming forward in Holmes' direction and ultimately hit Holmes' vehicle. Because of Jacky Bean's actions, Holmes continued with his efforts to stop the driver.

Jacky Bean continued after passing Holmes' and after hitting his vehicle. Holmes then goes forward to check on the occupants of the Mustang but the driver took off and continued evading Holmes and at that time Holmes fired shots toward the rear of the Mustang. It is claimed in this litigation that one of the shots fired from behind struck Ms. Comer.

3

At the time shots were fired, Jacky Bean had committed multiple criminal offenses to include aggravated assault, evading arrest, speeding and reckless driving. Furthermore, Holmes actions were taken in an effort to stop Jacky Bean and based on his actions and in order to protect other police officers involved in the pursuit as well as the public in that there are houses located all around where this incident took place. Holmes' actions were directed toward the driver, not the passenger. Jacky Bean was a clear danger.

After Jacky Bean drove the Mustang away from Holmes' location, Jacky Bean ran off the side of the road into a wet area and Ms. Comer was found in the vehicle with Jacky Bean leaving her unattended. Jacky Bean hid in the woods for several hours. Ms. Comer was transported by emergency medical services to a local emergency room but she ultimately passed away.

## TRIAL ISSUES

The pertinent issues for trial include the following:

1. Whether Defendants Shrum and Bean are liable in the official capacities;
2. Whether Defendants Shrum and Bean are liable in the individual capacities;
3. Whether the doctrine of qualified immunity is applicable;
4. Whether Shelby Comer died as a result of a gun-shot wound or other cause, specifically methamphetamine use; and
5. Damages.

## LEGAL ANALYSIS

### Official Capacity Claims

Plaintiffs did not name Grundy County as a party to this case but rather have made allegations against Clint Shrum and Tony Bean in their official capacities as sheriff and chief deputy of the Grundy County Sheriff's Office. As the Court knows, official capacity claims are

4

in essence claims against the municipality, in this case Grundy County. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); See also, *Lambert v. Hartman,* 517 F.3d 433 (6th Cir. 2008). Therefore, Plaintiffs' claims against Defendants Shrum and Ben in their official capacity are governed by the standard required for recovery against Grundy County. For a local government to be held liable for injuries under § 1983, a plaintiff must allege and ultimately show that the violation of his/her constitutional rights was the result of some "policy or custom" attributable to the governmental entity. *Monell v. New York Dept. Soc. Servs.,* 436 U.S. 658 (1978).

It is well settled that broad, generic and conclusory allegations that an unlawful policy or custom existed without specifically identifying the policy or stating a pattern of conformance is insufficient to state a claim under section 1983 against a governmental entity defendant. *Hugger v. Bogen,* 503 Fed.App'x 455, 462 (6th Cir. 2012); *Rowland v. City of Memphis,* 2013 LEXIS 68812 (W.D. Tenn. 5/15/13). Plaintiffs therefore must clearly and specifically identify the policy that caused the injury complained of and establish that the adequately identified policy was the moving force behind the deprivation of the plaintiff's constitutional rights. See, *Savoie v. Martin,* 673 F.3d 488 (6th Cir. 2012). Broad, generic, and unspecific allegations of the existence or effect of a policy or custom are "woefully inadequate" to meet a plaintiff's burden of establishing the required policy or custom at trial and likewise insufficient to overcome a motion for summary judgment. *Petty v. County of Franklin,* 478 F.3d 341, 348 (6th Cir. 2007).

Plaintiffs must therefore identify a specific policy, custom or standard in Grundy County sufficient to support their claims. Plaintiffs cannot meet this burden because Grundy County had in proper place policies, practices, and procedures at all pertinent times regarding training for police officers and the use of deadly force. Further, Plaintiffs cannot establish that any such policy or custom was the cause of Ms. Comer's death.

5

Plaintiffs claim that Holmes was not properly trained and should not have been working as a police officer at the time of the incident giving rise to this litigation. Despite Plaintiffs' claims, there is absolutely no policy or custom in Grundy County in which unqualified police officers are employed. To the contrary, Grundy County takes appropriate actions to make sure that its police officers receive the training necessary in order for them to work as police officers. Importantly, Plaintiffs each have no information upon which they rely in support of their claims relating to policy. Mr. Comer testified that he has no information or knowledge regarding the polices and/or customs of Grundy County as it relates to hiring and/or use of part-time police officers. Mr. Comer further testified that he has no information regarding a violation of Grundy County's use of force policy as it relates to the incident giving rise to this matter. Mr. Comer further ***does not know the specific policy or custom that led to the death of his daughter, Shelby Comer, on December 23, 2017***. That is to say on the critical issue of the specific policy or custom that caused Shelby's death, as alleged in this case and as required by clearly established legal precedent, Mr. Comer has no information upon which to base his claims.

Mr. Comer claims Defendant Holmes was not properly trained because he was not POST certified and did not have the mandatory 80-hours of training required of a part-time police officer. As indicated earlier, Holmes was not required to be POST certified and did have the 80 hours of training. That having been said, Mr. Comer had no information regarding any other part-time law enforcement officer in Grundy County not being properly trained to the extent he/she lacked POST certification or the mandatory 80-hours of training. In that respect, Holmes was the only part-time police officer employed by Grundy County under Defendant Shrum who was not POST certified. Therefore, no history exists upon which Plaintiffs could base a claim or allegation that Grundy County has a history and pattern of using part-time police officer in an

6

improper manner.

Similarly, Plaintiff Mary Nabors has no information as to Grundy County policies and no information as to Defendant Holmes' training except as it relates to him not being POST certified. Ms. Nabors has no knowledge or information as it relates to the policies of Grundy County. Ms. Nabors further had no information regarding Defendant Holmes' qualifications to work as a police officer.

To the contrary, the evidence in this case is clear and undisputed but that Grundy County has policies in place regarding officer training and use of force. Grundy County's polices are proper and were in force and effect on the date of the incident giving rise to this litigation, December 23, 2017

As it relates to training, in order for Plaintiffs to establish that a failure to train or supervise its officers rises to the level of a *de facto* unconstitutional policy or custom, Plaintiffs must prove: (1) **the training or supervision provided was inadequate to the tasks performed;** (2) **the inadequacy was the result of Grundy County's deliberate indifference;** and (3) **the inadequacy was closely related to or actually caused the injury.** *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (emphasis added). **Plaintiffs bear the burden of establishing all of these elements**. *Campbell v. Anderson Cnty.*, 695 F.Supp. 2d 764, 772 (E.D. Tenn. 2010). It is not enough to simply make the allegations. Plaintiffs actually must have evidence to establish the foregoing elements. However, the undisputed evidence in this case establishes that Plaintiffs cannot.

The evidence establishes that Holmes went through proper and training prior to and after his employment as a Grundy County police officer. Therefore, the evidence in this case is that Holmes was properly working as a police officer for Grundy County on December 23, 2017.

Plaintiffs further fail in this respect because they fail to establish that Holmes' lack of training and/or POST certification caused the incident involving Ms. Comer. In fact, Holmes, after December 23, 2017, obtained POST certification to work as a full-time law enforcement officer and when asked in this case to confirm that based on his POST training he knew that he should not have fired the shots to the rear of the Mustang, Holmes stated that was not correct. Rather, Holmes stated that he would not change any of his actions, including the timing of shots fired, based on the POST training.

There is no evidence to establish that the lack of training was either a policy or led to the incident on December 23, 2017. In fact, the evidence as more fully set forth herein establishes the opposite.

Even assuming Plaintiffs could show that some aspect of training provided was inadequate and/or led to the incident giving rise to this litigation, which they cannot, they fail at the next level by failing to show the inadequacy results from ***deliberate indifference***. *City of Canton v. Harris*, 489 U.S. 378, 338 (1989). Deliberate indifference is a stringent standard of fault requiring proof that a municipal actor, in this case Defendants Shrum and/or Bean, disregarded a known or obvious consequence of his action. *Miller v. Calhoun Canty., 408* F.3d 803, 815 (6th Cir. 2005). Deliberate indifference is not established by merely showing that a specific injury could have been avoided with more or better training. *Mayo v. Macomb County*, 183 F.3d 554, 558 (6th Cir. 1999). Deliberate indifference further "does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference" to the alleged violation. *Thomas v. City of Chattanooga,* 398 F.3d 426, 433 (6th Cir. 2005) (emphasis added). Neither simple nor even heightened negligence will suffice. *Board of County Comm'rs of Bryan Co. v. Brown*, 520 U.S. 397 (1989).

There is no evidence in this case that Defendants Shrum and/or Bean, officially or individually, engaged in the type of conduct sufficient to support a claim of deliberate indifference. Rather, Defendant Shrum confirmed that Defendant Holmes had proper training and was qualified to work as a part-time police officer for Grundy County. The same is true of Defendant Bean. Furthermore, Holmes confirmed his in-service training while at Grundy County. He further confirmed prior training. Again, deliberate indifference is a very high burden and the undisputed evidence in this case establishes a lack of the same based on the evidence more fully discussed above.

## Individual Capacity Claims

Plaintiffs have sued Defendants Shrum and Bean in their individual capacities. The law regarding individual liability for Constitutional violations is clearly established, particularly as it relates to supervisory personnel. More specifically, the doctrine of respondent superior does not apply in a §1983 action so as to impute liability to supervisory personnel. *Monell v. Dept. Social Servs.,* 436 U.S. 658 (1978). For individual liability, there must be a showing that the party sued in his/her individual capacity was personally involved in the alleged unconstitutional conduct. *Petty v. County of Franklin,* 478 F.3d 341 (6th Cir. 2007).

In this case, Plaintiffs must establish that Defendants Shrum and Bean "personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the alleged unconstitutional conduct" by Holmes. *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999). Without direct participation in the alleged unconstitutional conduct complained of, Plaintiffs must prove that Defendants Shrum and/or Bean abandoned specific duties of their position in the face of actual knowledge of a breakdown in the proper workings of the Grundy County Sheriff's Department. *Shehee v. Luttrell,* Id. (citing Taylor v. Mich. Dep't of Corr., 69 F.3d 76, 81 (6th Cir. 1995)) (emphasis added). Furthermore, Plaintiffs must prove that Defendants Shrum and/or Bean

9

abdicated their job responsibilities and the active performance of Defendants' individual job function must have directly resulted in the constitutional injury complained of, in this case the death of Shelby Comer. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006).

Plaintiffs in this case in pursuing the individual liability claims against Defendants must show that Defendants implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of Defendant Holmes. See, *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Plaintiffs have not satisfied their burden of proof by showing that either Defendant Shrum or Defendant Bean inadequately performed their responsibilities as it relates to the training and/or supervision of Mike Holmes. Rather, Plaintiffs must prove a complete abdication of responsibility by Defendants Shrum and Bean to establish that they implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of Defendant Holmes. See, *Winkler v. Madison County*, 893 F.3d 877, 899 (6th Cir. 2018) (distinguishes between inadequate performance and complete abdication of responsibility) and *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982).

Neither Defendant Shrum nor Defendant Bean participated in the events allegedly resulting in Comer's death. Furthermore, Plaintiffs have no information regarding the individual liability claims against Defendants. Ms. Nabors is making no claim that either Clint Shrum or Tony Bean were present at the time of the incident giving rise to this litigation. Mr. Comer specifically testified that he did not even have an understanding as to why Defendants Shrum and/or Bean were being sued individually. Mr. Comer further confirmed that the claims against Defendants in their official capacity and individual capacity were the same. Along those same lines, Mr. Comer confirmed that the claim of individual liability is ***not*** based on Defendants Shrum and/or Bean taking any direct actions that led to the incident giving rise to this mater, but

rather related to the allegations pertaining to training.

Therefore, the evidence in this case does not support any claim of individual liability as to Defendants Shrum and/or Bean. Plaintiffs further cannot meet the legal requirements supporting any claim of individual liability.

## **Qualified Immunity**

The issue of qualified immunity is essential in this case. The doctrine of qualified immunity provides that public officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 467 U.S. 800, 818 (1982). The plaintiff bears the burden of proving that the individual defendants are not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006), citing *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

Over recent years the United States Supreme Court has issued a number of opinions reversing federal courts in qualified immunity cases. See, *e.g., City and County of San Francisco v. Sheehan*, 575 U.S. , ___ n. 3 (2015) (slip op. at 10, n.3). The Court has reversed the federal courts in these cases because the doctrine and principle of qualified immunity is important to "society as a whole," *ibid.,* and because as "an immunity from suit," qualified immunity "is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The top court therefore recognizes the critical importance of qualified immunity.

To determine the applicability of qualified immunity, courts use a multi-step inquiry. First, and viewing the facts most favorable to the plaintiff, has the plaintiff shown a constitutional violation has occurred? Second, was the constitutional right clearly established

11

at the time of the violation? *Phillips v. Roane County*, 534 F.3d 531, 538-39 (6th Cir. 2008). If a right is found to have been clearly established, a third step is necessary to determine whether it was objectively reasonable for the defendant to believe that his or her actions did not violate those rights. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

Notably, law enforcement officials are entitled to qualified immunity "when their decision was reasonable, even if mistaken." *Castro v. United States*, 34 F.3d 106, 112 (2nd Cir. 1994). It must therefore be clear to a reasonable officer that his conduct was unlawful in the situation confronted in order for the immunity not to apply. *Soloman v. Auburn Hills Police Department*, 389 F.3d 167, 173 (6th Cir. 2004). In doing so, it is critical to understand that because qualified immunity is clearly established law, it is not to be defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). See also, *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citations omitted). Therefore, and as clearly established law, qualified immunity must be "particularized" to the facts of the specific case under consideration. *Anderson,* 483 U.S. at 640. The court is to determine whether it would be clear to a reasonable officer under the circumstances of each case that her conduct was unlawful in the situation. *Cortez v. McCauley,* 478 F.3d 1108, 1114 (10th Cir. 2007). ***This standard is relatively deferential to the party claiming the immunity and, in any gray area, the officer prevails.*** *Mullenix v. Luna*, 136 S.Ct. 305, 312 (2015) (emphasis added).

Defendant Holmes at all times acted in an objectively reasonable manner and did not violate any of Comer's constitutional rights. Defendant Holmes, prior to using any force, attempted to conduct a traffic stop but the driver of the vehicle, Jacky Bean, failed to comply and led Defendant Holmes on a pursuit through various roads and locations. Defendant Holmes' only used his gun in response to a threat when Jacky Bean (1) pointed a silver handgun at

Defendant Holmes; and (2) drove his vehicle directly at Defendant Holmes and in the direction other law enforcement were coming. Jacky Bean was therefore a threat based on the gun and use of his vehicle. Defendant Holmes continued use of force after Jacky Bean passed was likewise objectively reasonable based on the threat posed by the vehicle to not only Defendant Holmes but also other police officer and the general public.

It should also be noted that Jacky Bean was, at the time of the incident, under the influence of methamphetamine. It should also be noted that independent witnesses, who are friendly with Jacky Bean, place a silver handgun in his possession on December 23rd. Simply put, Jacky Bean had a gun that he pointed at Mike Holmes.

The law is clear that use of lethal force for the protection of others and to prevent harm to other parties, is proper and an officer using such force is entitled to the protections afforded by the doctrine of qualified immunity. This issue was discussed by the United States Supreme Court in *Plumhoff v. Rickard*, 572 U.S. 765 (2014).

In *Plumhoff*, a case from the 6th Circuit, the Court addressed the propriety of a qualified immunity defense in the context of a fleeing vehicle. Donald Rickard, and his passenger, were each hit by shots fired by a police officer. *Id.* at 765. More specifically, the officer fired twelve (12) shots as Mr. Rickard sped away. Mr. Rickard and his passenger each died. *Id.*

Mr. Rickard's daughter filed a § 1983 lawsuit alleging the officers used excessive force by firing the shots at the fleeing vehicle in violation of the Fourth and Fourteenth Amendments. The District Court denied the officers' motion for summary judgment on qualified immunity and the Sixth Circuit affirmed. *Id.* The United States Supreme Court, however, reversed and remanded the denial of the motion for summary judgment. *Id.* at 767.

In so doing, the Supreme Court viewed the facts in the light most favorable to the non-

moving party. *Id.* at 768. Still, the Supreme Court concluded that qualified immunity was appropriate under the facts and circumstances of the case. The Supreme Court held that a claim of excessive force to affect a seizure is governed by the Fourth Amendment's "reasonableness" standard. *Id.* at 774. See, *Graham v. Connor*, 490 U.S. 386 (1989) and *Tennessee v. Garner*, 471 U.S. 1 (1985). The Court noted that pursuant to *Graham*, "the objective reasonableness of a particular seizure under the Fourth Amendment 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Garner*, 490 U.S. at 396. The Supreme Court further noted that pursuant to *Garner*, and in the context of a qualified immunity defense, ***the foregoing must be analyzed from the perspective of a reasonable officer on the scene***, rather than 20/20 vision hindsight and that the Court was to allow for the fact that officers ***are faced with split-second decisions***. *Plumhoff*, 572 U.S. at 775. See also, *Garner*, 490 U.S. at 396-97.

Ultimately, the Supreme Court determined that use of lethal force by the officers was reasonable based on the threat that the driver, Mr. Rickard, posed by continuing the chase. In so doing, the Supreme Court noted that based on Mr. Rickard's activity in continuing the pursuit, "all that a reasonable police officer could have concluded was that ... if he was allowed to do so, he would once against pose a deadly threat for others on the road." *Plumhoff*, 572 U.S. at 777. See also, *Hermiz v. City of Southfield*, 484 Fed.Appx. 13, 16 (6th Cir. 2012) (officer justified in using deadly force against a driver who objectively appears ready to drive into an officer or bystander and permitting use of continued fire at a fleeing vehicle when the officer's prior interactions with the driver suggest continued danger to others) (citing *Brousseau v. Haugen*, 543 U.S. 194, 197-200 (2004)).

The Supreme Court further held that the officers firing fifteen (15) shots into the rear of

the Rickard vehicle likewise was not a Constitutional violation by holding that "[I]t stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Id.* at 777. In other words, the use of force is justified util the threat is over. *Id.*

It should be noted that in *Plumhoff*, Mr. Rickard led the police on a chase that lasted over five (5) minutes and eventually collided with a police car and came to a temporary stand still. Less than three (3) seconds later, Mr. Rickard resumed evading the police and just before shots were fired, the front bumper of his car hit one of the police officer's cruiser. *Id.* at 776.

The foregoing facts are very similar to the facts in this case relating to Jacky Bean leading Defendant Holmes on a police chase through various roads (Highway 56, Q-Switch Road and B-Mine Road), coming to a stop but starting to pull away after coming to a stop (on Q-Switch Road), stopping on B-Mine Road but spinning the car around in a face-off with Holmes, and then continuing forward toward Holmes, coming into contact with Holmes' vehicle, stopping and then, yet again, continuing to flee. In that respect it is claimed in this litigation that one of the shots fired by Defendant Holmes after Jacky Bean drove by is the shot that killed Shelby Comer and that Defendant Holmes fired five (5) shots, significantly less than in *Plumhoff*, at the rear of the vehicle.

Plaintiffs cannot simply rely on the fact that Defendant Holmes fired shots at the vehicle in which Ms. Comer was a passenger after it passed as being conclusive of the Constitutional violation claim in this case. Rather, it was the continued threat posed by the vehicle as described above that Defendant Holmes was responding to when he discharged his gun, which in accordance with United States Supreme Court precedent is objectively reasonable.

Therefore, under the particularized facts and circumstances of this case, Defendant

Holmes acted reasonably and therefore the doctrine of qualified immunity shields all Defendants from having liability in this case regardless of the theory pursued by Plaintiffs.

### Cause of Death and Damages

Plaintiffs must of course establish that Defendants caused Ms. Comer's death. For the reasons set forth above, Plaintiffs cannot do so. Additionally, the evidence in this case establishes that at the time of the incident involving Defendant Holmes, Ms. Comer was under the influence of methamphetamine and her level of methamphetamine was in the fatal range. Expert testimony will establish that prior to ever being hit by a bullet, Ms. Comer had died from methamphetamine use. In any event, Ms. Comer's methamphetamine level was so high that she would not have been aware of her environment or outside stimulus, which directly contradicts testimony and claims made in this case.

Plaintiffs must further of course establish damages. In that respect, the parties have each disclosed expert witness on claimed future pecuniary damages based on the specific and individual circumstances regarding Ms. Comer as it relates to her drug use, education and other related matters.

Lastly, Plaintiffs have sued for punitive damages. As the Court knows, if the Plaintiffs prove that Defendants acted with malice or willfulness or with callous and reckless indifference to the safety or rights of others, punitive damages are recoverable. In that respect, Plaintiffs must establish their claim of punitive damages as to the specific claims made against each Defendant.

Regarding punitive damages, a party acts willfully or with reckless indifference to the rights of others when he or she acts in disregard of a high and excessive degree of danger about which he knows or which would be apparent to a reasonable person in his condition. Defendants'

conduct therefore has to be shocking and offensive to justify an award of punitive damages, *Broadnax-Hill v. Hosington*, 625 Fed.Appx. 268 (6th Cir. 2015).

The evidence in this case does not rise to the level of punitive damages as to these Defendants for all the reasons set forth above.

Respectfully submitted,

**SPICER RUDSTROM, PLLC**

BY: /s/ B. Thomas Hickey, Jr.
B. Thomas Hickey, Jr., BPR #019105
Attorneys for Defendants Shrum and Bean
537 Market Street, Suite 203
Chattanooga, TN 37402
423-756-0262
423-756-8489 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2021, I electronically filed this document along with any exhibits with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Fred C. Dance
234 1st Avenue South
Franklin, TN 37064

Drew Saulters
330 Commerce Street, Suite 110
Nashville, TN 37201

**SPICER RUDSTROM, PLLC**

BY: /s/ B. Thomas Hickey, Jr.